IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Wes L Williams, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Implus Footcare, LLC, d/b/a Perfect Fitness, A Delaware corporation,<br>    Serve registered agent:<br>    CSC-Lawyers Incorporating<br>    Service Company<br>    221 Bolivar Street<br>    Jefferson City, MO 65101<br><br>        Defendant. | Case No. _____ |

## CLASS ACTION COMPLAINT

Plaintiff Wes L Williams, individually and on behalf of all others similarly situated, for his claims against Implus Footcare, LLC d/b/a Perfect Fitness ("Perfect Fitness"), states and alleges as follows:

## INTRODUCTION

1. This putative class action lawsuit asserts failure to warn and design defect claims as set forth in the Restatement (Second) of Torts, § 408A and codified in § 537.760 RSMo.

2. This lawsuit involves an exercise apparatus called the Perfect Multi-Gym ("Multi-Gym"), manufactured by Perfect Fitness.

3. The Multi-Gym was designed in a defective manner that could cause and has caused severe bodily injury with ordinary use, particularly in the absence of an adequate warning.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount at issue exceeds $75,000 exclusive of interest and costs.

5. This Court has personal jurisdiction over Perfect Fitness because Perfect Fitness transacts business within this judicial district, in that it sells exercise apparatus and equipment in this judicial district through various retail outlets. Perfect Fitness has a registered agent within the State of Missouri that is authorized to accept service of process for lawsuits filed against it in this judicial district.

6. Venue is proper in this judicial district because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## THE PARTIES

7. Plaintiff Wes L Williams ("Williams") is a citizen of Columbia, Boone County, Missouri, and an owner of a Multi-Gym that was manufactured by Perfect Fitness.

8. Defendant Perfect Fitness is a Delaware corporation with its principal place of business at 2001 T.W. Alexander Drive, Durham, North Carolina. Perfect Fitness manufactured the exercise device at issue in this lawsuit and sold that device to consumers through its authorized retailers.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### Problems with the Multi-Gym

9. Perfect Fitness was founded in 2004 and became a privately held subsidiary of Implus Footcare in 2011.

10. Implus Footcare markets the Multi-Gym in over 50,000 stores worldwide, including Walmart, Dick's Sporting Goods, and Academy Sports.

11. The Multi-Gym is a metal, plastic, and rubber apparatus designed to be temporarily installed inside interior doorways. Once installed, the consumer can use the Multi-Gym to perform pull up exercises, as described in Perfect Fitness's instructional materials.

12. Prior to initial use, consumers must first assemble the Multi-Gym device from multiple provided parts and fasteners pursuant to instructions detailed in an accompanying printed booklet entitled "User Guide."

13. Step 1 of the Multi-Gym assembly instructions directs the consumer to assemble the "Crossbar," which is the round, foam covered metal tubing the consumer grasps when performing pull up exercises.

14. The Crossbar is comprised of the "Left Bar Assembly" and the "Right Bar Assembly," which telescope together and join in the middle.

15. The telescoping joint described above is fastened together and held in place by two M6-1.00 Phillips driven truss head metal machine screws and two metal split lock washers (described in the User Guide as "Phillips Bolts" and "Spring Washers," respectively).

16. When assembled and tightened according to the User Guide, each Phillips Bolt head overhangs the underlying lock washer and stands proud of the round Crossbar, creating an exposed gap between the two surfaces of approximately one-eighth of an inch.

17.     The Crossbar is covered with a factory-installed, soft foam sleeve that serves as the grip around which the consumer places his or her hands when performing pull up exercises.

18.     The foam sleeve is manufactured with two holes through which the aforementioned Phillips Bolts and Spring Washers are inserted during assembly.

19.     Once assembled, the foam surrounds the head of each Phillips Bolt and conceals the gap described above; however, the foam easily compresses and stretches, thereby exposing the protruding Crossbar fasteners and the associated gap.

20.     Through normal use of the Multi-Gym for its intended purpose, the two holes in the foam sleeve can elongate, further exposing the protruding Crossbar fasteners.

21.     The protruding Crossbar fasteners described above constitute a dangerous design which subjects consumers to the risk of serious bodily injury.

### Improper Warning of Dangers

22.     As purchased by Williams, the User Guide contained various warnings and "Important Safety Information" regarding use of the Multi-Gym product, including specific workout clothing recommendations.

23.     Despite the various warnings, advice and instruction provided with the device, Perfect Fitness failed to warn consumers that wearing jewelry, such as a ring, while using the Multi-Gym device is dangerous.

### Williams's Bodily Injury

24.     On August 1, 2018, Plaintiff Williams was using the Multi-Gym apparatus to perform pull up exercises.

25. Williams previously assembled his Multi-Gym pursuant to the instructions provided by Perfect Fitness and using the parts and fasteners provided with the product.

26. Williams was unaware of the danger posed by the exposed and protruding Crossbar fasteners.

27. Williams was wearing his wedding ring while using the Multi-Gym apparatus.

28. When Williams released his grip on the Multi-Gym Crossbar, his wedding ring was ensnared by one of the exposed and protruding Phillips Bolts and as the full weight of his body returned to the floor, Williams's left ring-finger remained hooked to the fastener and was stretched to the point it ripped from his hand.

<u>Perfect Fitness's Product Improvements</u>

29. At least three different designs of the Multi-Gym have been marketed to consumers by Perfect Fitness.

30. The Multi-Gym design that injured Plaintiff Williams is depicted in a User Guide copyrighted in 2012 and the protruding Crossbar fasteners in question are positioned on the backside of the Crossbar, so the head of the Phillips Bolts face away from the user and toward the doorway when in use.

31. A redesigned version of the Multi-Gym depicted in a User Guide copyrighted in 2014 features the same protruding Crossbar fasteners, but they have been relocated to the opposite side of the bar, so the head of the Phillips Bolts face the user.

32. Another redesigned version of the Multi-Gym depicted in a User Guide copyrighted in 2016 removed the protruding Crossbar fasteners entirely and the

telescoping Crossbar joint instead employs an interlocking "L-channel" design that does not require any separate fasteners to hold it in place.

33. By eliminating the protruding Crossbar fasteners, Perfect Fitness simultaneously eliminated the danger posed by the same fasteners.

34. Although Perfect Fitness eventually corrected the design defect described herein, the company has not provided any warnings to consumers of the defective Multi-Gyms detailing the dangers posed by the prior designs, or to advise them not to wear jewelry, such as rings, while using the device.

35. Consumers who use one of the earlier designs of the Multi-Gym device thus remain susceptible to the risk of significant body injury, including the loss of a finger, while using the Multi-Gym device designed, manufactured and distributed by Perfect Fitness with protruding Crossbar fasteners.

CLASS ACTION ALLEGATIONS

36. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Williams brings this action on behalf of himself and all natural persons who purchased the Multi-Gym apparatus designed with protruding Crossbar fasteners. Excluded from the class are all judicial officers presiding over this or any related case. The class definition also excludes all employees of Perfect Fitness or of their corporate affiliates. Williams reserves the right to modify this class definition as discovery or other case circumstances warrant.

37. Although the exact number of class members is presently unknown, plaintiffs allege that the class will number in the thousands of consumers, thereby making joinder impracticable. Perfect Fitness markets the Multi-Gym in over 50,000 stores

worldwide, including Walmart, Dick's Sporting Goods, and Academy Sports. This class easily satisfies the numerosity requirement for class certification.

38. Class certification is also appropriate because there are questions of fact and/or law that are common to the plaintiff and the class members. These common questions of fact and/or law include, but are not limited to:

   a. Whether the design of the Multi-Gym designed with protruding Crossbar fasteners is defective and unmerchantable;

   b. Whether Perfect Fitness failed to warn consumers of the dangers of the Multi-Gym designed with protruding Crossbar fasteners;

   c. Whether the Multi-Gym apparatus designed with protruding Crossbar fasteners did, in fact, pose a danger of serious bodily injury to consumers.

39. Plaintiff Williams's claims are typical of the claims of absent class members in that Williams, like all the absent class members, purchased the Multi-Gym designed with protruding Crossbar fasteners and was not warned of the dangers of the apparatus.

40. Plaintiff Williams is a member of the class he seeks to represent.

41. Plaintiff Williams is an adequate class representative in that, as a member of the class and as a consumer of the Multi-Gym designed with protruding Crossbar fasteners, his interests are aligned with those of the class.

42. There are no individual conflicts that would prevent Williams from adequately representing the class.

43. Plaintiff Williams has retained competent counsel experienced in class action litigation.

44. Class certification is proper because common questions of fact and law predominate over questions that may affect only individual members of the class. The Multi-Gym devices at issue are manufactured en masse, and this case involves a design defect that was present in all Multi-Gym devices manufactured prior to the release of the redesigned Multi-Gym version which eliminated the danger posed by the protruding Crossbar fasteners. Evidence of a defect in the design of the subject Multi-Gym would predominate over the entire class membership, as would evidence of Perfect Fitness's course of action, knowledge of the alleged defect and any alleged concealment or misrepresentation thereof.

45. A class action presents a superior form of adjudication over individual litigation.

46. The costs of litigating this action against large and sophisticated entities such as Perfect Fitness, in comparison to the recovery or relief sought, would make individual litigation impracticable. In addition, forcing individual litigation would risk the result of inconsistent rulings with respect to Perfect Fitness's duties owned to members of the class.

47. This class action is manageable. The proposed class represents an identifiable community that can be readily identified, and the relief sought is one that can be overseen by this Court.

CAUSES OF ACTION

Count I – Design Defect

48. Williams incorporates by reference the forgoing allegations as if fully set forth herein.

49. Perfect Fitness has marketed and sold the Multi-Gym equipped with protruding Crossbar fasteners in over 50,000 retail locations nationwide.

50. Williams purchased the Multi-Gym apparatus through one of these authorized retailers in the State of Missouri.

51. Williams assembled the Multi-Gym apparatus in accordance with the instructions and warnings provided by Perfect Fitness.

52. Williams used the Multi-Gym apparatus in a manner reasonably anticipated, in that he performed pull-up exercises.

53. The Multi-Gym apparatus was defective and dangerous when put to a reasonably anticipated use, and Williams was damaged as a direct result of such defective condition as existed when the product was sold. Williams suffered severe bodily injury, including the loss of a finger, and past and future medical expenses.

54. The Multi-Gym designed with protruding Crossbar fasteners is unreasonably dangerous when used by consumers, particularly those wearing jewelry. Specifically, through normal use of the Multi-Gym apparatus, rings can catch on the protruding Crossbar fasteners, causing significant bodily injury to the consumer. Also, as a direct and proximate result of the defect in the Multi-Gym apparatus as set forth in the preceding paragraphs, Williams suffered past, present and future lost wages; past, present and future pain and suffering; lost enjoyment of life; and lost past, present and future household contributions.

### Count II – Failure to Warn (Strict Liability)

55. Williams incorporates by reference the foregoing allegations as if fully set forth herein.

56. Perfect Fitness marketed and sold the Multi-Gym designed with protruding Crossbar fasteners in over 50,000 retail locations nationwide.

57. Williams purchased the Multi-Gym apparatus through one of these authorized retailers in the State of Missouri.

58. Williams assembled the Multi-Gym apparatus in accordance with the instructions and warnings provided by Perfect Fitness.

59. Williams used the Multi-Gym apparatus in a manner reasonably anticipated, in that he performed pull-up exercises.

60. The Multi-Gym apparatus was unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and Williams was damaged as a direct result of the product being sold without an adequate warning. Williams suffered severe bodily injury, including the loss of a finger, and past and future medical bills. Also, as a direct and proximate result of the defect in the Multi-Gym apparatus as set forth in the preceding paragraphs, Williams has suffered past, present and future lost wages; past, present and future pain and suffering; lost enjoyment of life; and lost past, present and future household contributions.

## Count III – Design and Failure to Warn (Negligence)

61. Williams incorporates by reference the foregoing allegations as if fully set forth herein.

62. Perfect Fitness marketed and sold the Multi-Gym designed with protruding Crossbar fasteners in over 50,000 retail locations nationwide.

63. Williams purchased the Multi-Gym apparatus through one of these authorized retailers in the State of Missouri.

64. Williams assembled the Multi-Gym apparatus in accordance with the instructions and warnings provided by Perfect Fitness.

65. Williams used the Multi-Gym apparatus in a manner reasonably anticipated, in that he performed pull-up exercises.

66. The Multi-Gym apparatus was defective when put to a reasonably anticipated use without knowledge of its dangerous characteristics, in that the protruding Crossbar fasteners can ensnare a user's jewelry, such as a ring.

67. Perfect Fitness failed to use ordinary care to either design the Multi-Gym apparatus to be reasonably safe or adequately warn of the risk of harm from using the apparatus while wearing jewelry.

68. As a direct result of Perfect Fitness's failure to use ordinary care as described herein, Williams sustained damage. Williams suffered severe bodily injury, including the loss of a finger, and past and future medical bills.

WHEREFORE, Plaintiff Williams and the class pray for a judgment:

A. Declaring this to be a proper class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B. Awarding Plaintiff Williams and the class compensatory damages of a form and in an amount to be determined at trial;

C. Awarding Plaintiff Williams the reasonable costs and fees incurred in bringing this action; and

D. Awarding Plaintiff Williams and the class such other and further relief as the Court deems just and appropriate.

JURY DEMAND

Plaintiff Williams demands trial by jury on all issues so triable.

Dated: October 8, 2018

Respectfully submitted,

/s/ David L. Marcus
David L. Marcus, MO Bar No. 47846
BARTLE & MARCUS LLC
116 W. 47th Street, Suite 200
Kansas City, Missouri 64112
Telephone: 816- 285-3888
Facsimile: 816- 222-0534
Email: dmarcus@bmlawkc.com

And
Aaron W. Moore, MO Bar No. 43182
1800 Pecan Grove
Carrollton, Texas 75007
Telephone: 214-876-5038
aaronwmoore@hotmail.com


Attorneys for Plaintiffs